[No. 29047. Department Two. June 18, 1943.]

H. W. FORRESTER, *Respondent*, v. VERA BELLE STANFORD, *as Executrix, Appellant.*[1]

*F. W. Moore,* for appellant.

*Marion Garland, Sr.,* and *Marion Garland, Jr.,* for respondent.

[1]Reported in 138 P. (2d) 874.

BLAKE, J.—This is an appeal by the defendant from a judgment establishing a claim filed by plaintiff against the estate of William Forrester, deceased.

William Forrester was the father of both the plaintiff and the defendant. He was eighty-four years of age at the time of his death, which occurred December 18, 1941. April 1, 1940, plaintiff was appointed guardian of his father's person and estate. He qualified by filing his oath and bond, and took possession of his father's estate and continued in possession until the latter's death. He never gave notice to creditors as required by statute; in fact, prior to his ward's death, he failed to comply with any of the statutory requirements with respect to the administration of the estate. On February 9, 1942, however, he filed a final report showing a balance of $1,723.63 due himself from the estate. This report was never called up for hearing and was never approved. He filed an inventory in the guardianship proceedings June 1, 1942; and, on the same day, filed a claim for $2,356.69 (the correct total of the items listed, however, is $2,256.69) against the estate of William Forrester, deceased. This claim consisted of the following items:

Nov. 12, 1939, Money loaned to William Forrester.................$1,250.00
Dec.    1941, Fissell Funeral Home    496.73
Dec.    1941, Doctor bill paid to the
    Rev. H. J. Wuerth............;....    60.00
Balance due from advances in guardianship of William Forrester, Probate Cause No. 6074, Kitsap County Superior Court......................    449.96

On June 15, 1942, he filed an "amended and supplemental claim" in the amount of $2,661.99. In this total were included the items of the original claim, additional items of expenditure made as guardian in behalf of the ward, and, also, items for room, board, and services furnished decedent while he was living in the home of plaintiff. The executrix rejected all items for board,

room, and services; and, also, disallowed the claim with respect to the balance claimed to be due plaintiff on account of expenditures made in connection with the administration of the guardianship estate. The item of twelve hundred fifty dollars claimed to have been loaned to William Forrester in November, 1939, was also disallowed.

The plaintiff brought this action to establish his claim in full. The court entered judgment, establishing the claim except for the items for room, board, and services furnished decedent while living in the home of plaintiff. Defendant appeals, contending that the court erred: (1) in allowing the balance claimed to be due on account of expenditures made by plaintiff in the administration of the guardianship estate; and (2) in finding and establishing an indebtedness of twelve hundred fifty dollars on account of the alleged loan made by plaintiff to his father in November, 1939.

The first contention presents a novel question: May a guardian, in the first instance, present and establish his account as such in the administration of his deceased ward's estate? We have been referred to no authority countenancing such a practice. Indeed, what authority we have been able to find bearing upon the subject leans to the contrary. In the first place, the statute itself (Rem. Rev. Stat., § 1575 [P. C. § 9907], amended, in other particulars, by Laws of 1941, chapter 83, p. 205, now appearing as Rem. Supp. 1941, § 1575) provides:

"It shall be the duty of the guardian of any estate: . . . At the expiration of his trust fully to account for and pay over to the *proper person* all the estate of said ward remaining in his hands." (Italics ours.)

Of course, the trust terminates with the death of the ward. Woerner, The American Law of Guardianship, p. 327, § 98; 25 Am. Jur. 37, § 53; 28 C. J. 1096, § 113.

■ That the statute (Rem. Rev. Stat., § 1575) contemplates an accounting in the guardianship proceedings before the guardian may file a claim against the deceased ward's estate, we think there can be no doubt. That is, and should be, the approved practice. See 12 R. C. L. 1154, § 46; Woerner, The American Law of Guardianship, p. 334, § 100; 25 Am. Jur. 106, § 170; *In re Sroufe's Estate*, 74 Wash. 639, 134 Pac. 471; *Egner, Guardian, v. McGuire, Administrator*, 7 Ark. 107; *Livermore v. Ratti*, 150 Cal. 458, 89 Pac. 327.

Respondent cites *In re Jordan's Estate*, 171 Wash. 624, 18 P. (2d) 855, as sanctioning the procedure adopted in the instant case. We fail to see any analogy between that case and this. That was an attempt by a guardian of minors to hold the estate of a deceased trustee of the minors' property to an accounting of the trust estate.

It may be argued that no harm can be done in countenancing the procedure followed here, because the same court has jurisdiction of both the guardianship proceedings and the administration of the estate of the deceased. To sanction such procedure, however, would ignore the statute and encourage a laxity in the administration of guardianship estates. Individual guardians—particularly if they are relatives of the wards— are too often prone to treat the estates of the wards as their own. In this instance, plaintiff was guardian in name only. He took possession of the trust estate and handled it as though it were his own. To countenance the procedure had in this case would, we think, not only ignore the statute (Rem. Rev. Stat., § 1575), but also tend to weaken the rule of strict accountability under which guardians are required to administer their trusts. This we are unwilling to do.

■ The alleged loan of twelve hundred fifty dollars was claimed to have been made by plaintiff to deceased when the latter was eighty-two years of age and about five months prior to the institution of the guardianship

proceedings. The circumstances under which the loan was claimed to have been made were testified to by two witnesses: the plaintiff's son, and the surety on his bond as guardian. The latter testified:

"Q. Tell the Court what you observed at that time in regard to whether or not the son, H. W. Forrester, gave any money to Mr. William Forrester. A. Yes, sir. Q. Tell the Court about it. A. We just came back from a hunting trip, finished our dinner, was playing pinochle, the three of us, Mr. Forrester's boy and myself. And his father was there and sat around and watched for a while; and he spoke to Henry and he came out right point-blank, wanted to know if he could have $1500.00. And he said, 'Sure, Dad.' Stepped out for a few minutes, and he came back and right there on the table he laid the money down. Q. Do you know how much was there? How much did he put down? A. When he counted out the money he only had $1250.00, and he says, 'Dad, I'll give you more later but that's all I got now.' So he counted it out. I noticed when he counted because I never saw so much money piled up at one time. And he counted out twenty-one fifties and ten twenties. Q. How do you remember the date? A. How do I remember the day? It was the day after Armistice Day, 12th day of November, 1939."

The son testified:

"Q. I will ask you whether or not any transaction took place in regard to some money at that time? A. Yes, there was. Q. Tell us what happened. A. My dad and Mr. McConnell and I were playing a game of pinochle; and my granddad was there, and he called my father out to the side and talked to him, and Dad says, 'All right,' and he went down in the basement and come back later with some money, and he loaned granddad a sum of money. Q. Do you know how much was there? A. I think it was $1250.00. . . . Q. Had you heard any conversation between your dad and him, saying what he was going to do with the money? A. I never heard anything like that. All he said was he talked to dad; and I don't know what he was talking about then, but dad come up with the money and they counted it out and dad asked him—he told him—he says, 'I have $1250.00 and if that isn't

enough I'll see what I can do for you tomorrow.' . . . Q. Then your grandfather said what? A. Well, he said, 'Could I talk to you a minute, Henry?' Q. Did your father get up then? A. Yes. Q. Where did he go? A. I think they went out in the kitchen. I'm not certain. Q. How long were they gone? A. Oh, about ten minutes. Q. Did they come back together? A. No, dad went outside, and then he came back into the kitchen, and he and granddad was together then."

As reluctant as we are to differ with the trial court upon findings of fact—particularly where they rest solely upon the credibility of witnesses—we are unable to bring ourselves to believe the testimony of these witnesses. The facts testified to are inherently improbable. Furthermore, there are such patent discrepancies of detail in their stories as to render them incredible.

The judgment will be affirmed as to the disallowance of the items claimed for room, board, and services. It will be reversed as to the item of twelve hundred fifty dollars alleged to have been loaned by respondent to deceased. It will also be reversed as to the balance claimed to be due for expenditures made in the administration of the guardianship—without prejudice, however, to respondent's right to have his accounts as guardian settled in the guardianship proceedings as required by Rem. Rev. Stat., § 1575.

SIMPSON, C. J., BEALS, ROBINSON, and GRADY, JJ., concur.